**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| MILEK KEY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   No. 4:23-CV-1635 JAR |
| | ) |
| UNKNOWN SPEARS, et al., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

This matter is before the Court on the motion of self-represented plaintiff Milek Key, a

pretrial detainee incarcerated at the St. Louis City Justice Center, for leave to commence this civil

action without prepayment of the required filing fee. [ECF No. 2]. The Court has reviewed the

motion and the financial information provided in support and will grant the motion and assess an

initial partial filing fee of $1.00. Additionally, the Court will issue process on plaintiff's claims for

excessive force against defendants Deputy Commissioner Unknown Spears, Captain Unknown

Wilborn, Lieutenant Unknown Loper, Lieutenant Unknown Bordos and Officer Unknown Randoff

in their individual capacities, as set out in detail below. However, all remaining claims and

defendants will be dismissed from this action. Further, the Court will deny, without prejudice,

plaintiff's motion for appointment of counsel. [ECF No. 3].

### 28 U.S.C. § 1915(b)(1)

Pursuant to 28 U.S.C. § 1915(b)(1), a prisoner bringing a civil action in forma pauperis is

required to pay the full filing fee. District courts "shall assess and, when funds exist, collect, as a

partial payment of any court fees required by law, an initial partial filing fee of 20 percent of the

greater of" the average monthly deposits to the prisoner's account, or the average monthly balance

in the prisoner's account for the prior six-month period. 28 U.S.C. § 1915(b)(1). After payment of the initial partial filing fee, the prisoner is required to make monthly payments of 20 percent of the preceding month's income credited to his account. 28 U.S.C. § 1915(b)(2). The agency having custody of the prisoner will forward these monthly payments to the Clerk of Court each time the amount in the account exceeds $10, until the filing fee is fully paid. *Id.*

Plaintiff has not submitted a prison account statement. As a result, the Court will require plaintiff to pay an initial partial filing fee of $1.00. *See Henderson v. Norris*, 129 F.3d 481, 484 (8th Cir. 1997) (when a prisoner is unable to provide the Court with a certified copy of his prison account statement, the Court should assess an amount "that is reasonable, based on whatever information the court has about the prisoner's finances."). If plaintiff is unable to pay the initial partial filing fee, he must submit a copy of his prison account statement in support of his claim.

**Legal Standard on Initial Review**

This Court is required to review a complaint filed in forma pauperis to determine whether summary dismissal is appropriate. *See* 28 U.S.C. § 1915(e). This Court must dismiss a complaint or any portion of it that states a frivolous or malicious claim, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2). An action is frivolous if it "lacks an arguable basis in either law or fact." *Neitzke v. Williams*, 490 U.S. 319, 328 (1989). An action fails to state a claim upon which relief may be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

A claim is facially plausible when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw upon judicial experience

and common sense. *Id.* at 679. The court must assume the veracity of well-pleaded facts but need not accept as true "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* at 678 (citing *Twombly*, 550 U.S. at 555). *See also Barton v. Taber*, 820 F.3d 958, 964 (8th Cir. 2016) (courts must "accept as true the facts alleged, but not legal conclusions or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements.").

This Court liberally construes complaints filed by laypeople. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). "Liberal construction" means that "if the essence of an allegation is discernible," the court should "construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework." *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015) (quoting *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004)). However, even complaints filed by self-represented persons must allege facts that, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980). Federal courts are not required to assume facts that are not alleged, *Stone*, 364 F.3d at 914-15, and are not required to interpret procedural rules to excuse mistakes by those who proceed without counsel. *See McNeil v. United States*, 508 U.S. 106, 113 (1993).

## The Complaint

Plaintiff Milek Key is a pretrial detainee at the St. Louis City Justice Center in St. Louis City, Missouri. [ECF No. 1, p. 2]. He brings this action pursuant to 42 U.S.C. § 1983 alleging violations of his civil rights. Plaintiff names the following persons as defendants: Deputy Commissioner Unknown Spears; Officer Unknown Watson; Officer Unknown Williams; Officer Unknown Bryant; Officer Unknown Hampton; Lieutenant Unknown Bordos; Lieutenant Unknown Gayden; Lieutenant Unknown Loper; Captain Unknown Benjiman; Captain Unknown

3

Wilborn; Unit Manager Unknown Bronk; and Officer Unknown Randoff. Plaintiff brings this action against defendants in their individual capacities only. *Id.* at pp. 2-5. The claims in his lawsuit relate to a single incident which allegedly occurred at the Justice Center on November 9, 2023.

Plaintiff alleges that on or about November 9, 2023, he was incarcerated at the St. Louis City Justice Center in 4 Bravo, Cell 12 when defendants Watson, Williams, Bryant, Hampton, Bordos, Gayden, Loper, Benjiman, Wilborn, Bronk, and Spears came toward his housing unit with rubber shotguns, pepper spray and police shields.[1] He states that when defendants "came in 4-B housing unit," he "resited [sic]"[2] by putting his hands up and then "lay[ing] down on [his] chest." [ECF No. 1, p. 6].

Despite plaintiff's assertions that he did not resist, defendants Deputy Commissioner Spears and Captain Wilborn fired multiple shots, and plaintiff was struck in the back of his head with rubber bullets. *Id.* Plaintiff states that Lieutenant Bordos placed handcuffs and leg restraints on him at the direction of defendant Spears, and Bordos then walked plaintiff to the bottom tier of the housing unit. Plaintiff alleges he was not resisting while walking to the bottom tier. *Id.*

Plaintiff states that Deputy Commissioner Spears then told Lieutenant Bordos, Lieutenant Loper and Officer Randoff to throw plaintiff on the ground "forcefully,"[3] and they purportedly did

---

[1] Officer Randoff is not mentioned by plaintiff as being in this initial group of defendants.

[2] Plaintiff states in his complaint that when defendants entered his housing unit, he "resited [sic]" by putting his hands up and then "lay[ing] down on [his] chest." The Court is unsure if plaintiff is attempting to use the word "resisted" in his complaint. *Black's Law Dictionary* (Fifth Ed.), defines "resisting an officer" as "obstructing, opposing, and endeavoring to prevent (with or without actual force) a peace officer... in the lawful discharge of his duty...." *Black's Law Dictionary* 1178 (5th ed. 1979). Plaintiff, however, does not describe his actions as "resisting" or "opposing" an officer, as he states that he had his hands up when the officers moved into his cell, laid down on his chest and was shot in the back of the head with rubber bullets. At this stage of the litigation, in preservice review, the Court must take plaintiff's allegations as true. *See, e.g., Johnson v. Grisham,* 827 F. App'x 612 (8th Cir. 2020) (reversing preservice dismissal of excessive force claim because it was not clear that "the allegations ... have no arguable basis in law or fact").

[3] The Court believes that plaintiff meant to use the term "forcibly."

4

so. *Id*. Plaintiff was allegedly knocked unconscious when he was thrown to the ground. *Id*. After this time, an unidentified Lieutenant started dragging plaintiff out of the unit by his handcuffs and leg restraints. Spears then directed persons plaintiff identifies as "them" to place plaintiff into a restraint chair in a "rubber room." *Id*.  Plaintiff states that he was kept in the chair for twenty-four (24) hours. *Id.* Plaintiff does not indicate what occurred after he was placed in the restraint chair, such as whether he was allowed breaks from the chair, whether he was checked at specific intervals, or whether he was kept in the chair continuously.

As a result of the altercation, plaintiff claims that he suffered bruising to his chin, wrist, and ankle. *Id.* He states that it "took defendants more than two weeks to give him medical attention." Plaintiff claims in a conclusory manner that he did not get to see a doctor, but he was given an X-ray and "examined." Plaintiff does not indicate who examined him or who ordered the X-ray. Plaintiff also fails to state when the X-ray occurred or what part of his body was X-rayed.

Last, plaintiff asserts in a conclusory manner that although Bordos, Loper and Randoff acted under the direction of Spears, that Gayden, Benjiman, Wilborn and Bronk watched and failed to intervene in the unconstitutional misconduct while it was occurring.

Plaintiff seeks monetary damages in this action.

### Discussion

Plaintiff, a pretrial detainee currently detained at St. Louis City Justice Center, brings this action against twelve (12) named employees of the St. Louis City Justice Center for purported violations of his civil rights pursuant to 42 U.S.C. § 1983. He asserts claims for excessive force and failure to intervene, as well as deliberate indifference to his serious medical needs, all in violation of the Fourteenth Amendment. After review of the complaint pursuant to 28 U.S.C. § 1915 for frivolousness, maliciousness and failure to state a claim, the Court will issue process as

5

to plaintiff's claims for excessive force against defendants Deputy Commissioner Spears and Captain Wilborn for firing on plaintiff with rubber bullets, as well as against defendants Lieutenant Bordos, Lieutenant Loper and Officer Randoff for allegedly throwing plaintiff down forcibly and purportedly knocking him unconscious. However, plaintiff's remaining claims, as well as all remaining defendants in this case, will be dismissed.

## A. The Majority of the Defendants Named in this Action Have No Causal Connection to Plaintiff's Claims in this Lawsuit and are Subject to Dismissal

Plaintiff claims in his complaint that defendants Watson, Williams, Bryant, Hampton, Gayden, Benjiamin, and Bronk initially came towards his housing unit at the St. Louis City Justice Center on November 9, 2023, with Deputy Commissioner Spears and Captain Wilborn with rubber shotguns, pepper spray and police shields. Plaintiff, unfortunately, does not detail the precipitating event which led to defendants' actions. However, plaintiff identifies defendants Deputy Commissioner Spears and Captain Wilborn as being the only two named defendants in this action who were at his cell and fired upon him during the alleged altercation. Plaintiff also identifies defendants Lieutenant Bordos, Lieutenant Loper and Officer Randoff as the three defendants who later engaged in excessive force against him at the direction of Spears.

However, plaintiff does not indicate where defendants Watson, Williams, Bryant, Hampton, Gayden, Benjiamin, and Bronk were located while Spears and Wilborn were allegedly shooting at plaintiff or when Bordos, Loper and Randoff were purportedly throwing plaintiff down and knocking him unconscious. To state a claim under 42 U.S.C. § 1983, a plaintiff must establish: (1) the violation of a right secured by the Constitution or laws of the United States, and (2) that the alleged deprivation of that right was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988). Liability in a 42 U.S.C. § 1983 case is personal. *See Frederick v. Motsinger*, 873 F.3d 641, 646 (8th Cir. 2017). In other words, "[g]overnment officials are

6

Case: 4:23-cv-01635-JAR   Doc. #: 4   Filed: 05/31/24   Page: 7 of 16 PageID #: 28



personally liable only for their own misconduct." *S.M. v. Krigbaum*, 808 F.3d 335, 340 (8th Cir. 2015). As such, § 1983 liability "requires a causal link to, and direct responsibility for, the deprivation of rights." *Mayorga v. Missouri*, 442 F.3d 1128, 1132 (8th Cir. 2006) (quoting *Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990)). *See also Kohl v. Casson*, 5 F.3d 1141, 1149 (8th Cir. 1993) (dismissing plaintiff's excessive bail claims because none of the defendants set plaintiff's bail, and therefore, "there can be no causal connection between any action on the part of the defendants and any alleged deprivation" of plaintiff's rights); and *Love v. Schoffman*, 142 Fed. Appx. 278, 279 (8th Cir. 2003) (affirming pre-service dismissal under 28 U.S.C. § 1915 because the complaint, among other infirmities, "did not specify which of the many named defendants was responsible for each of the alleged harms"). To that end, a plaintiff must allege facts connecting the defendant, or defendants, to the challenged action. *See Bitzan v. Bartruff*, 916 F.3d 716, 717 (8th Cir. 2019).

Because plaintiff has failed to assert that defendants Watson, Williams, Bryant, Hampton, Gayden, Benjiamin, and Bronk[4] were engaged in unconstitutional misconduct themselves during the altercations described by plaintiff, the Court must dismiss all claims against these defendants.

---

[4] As noted *supra*, plaintiff alleges in his complaint, in an entirely conclusory manner, that defendants Gayden, Benjiman, Wilborn and Bronk watched and failed to intervene in unconstitutional misconduct while it was occurring. Plaintiff does not indicate where defendants Gayden, Benjiman and Bronk were located when unconstitutional misconduct was allegedly occurring such that they could have been expected to intervene. Specifically, he makes no factual assertions as to where each defendant allegedly was when he was purportedly being subjected to excessive force or why he believes one of the other defendants should have been expected to intervene in the other officer's conduct. The Court must "accept as true the facts alleged, but not legal conclusions or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Barton v. Taber*, 820 F.3d 958, 964 (8th Cir. 2016). *See also Brown v. Green Tree Servicing LLC*, 820 F.3d 371, 372-73 (8th Cir. 2016) (stating that the court must accept factual allegations in complaint as true but is not required to "accept as true any legal conclusion couched as a factual allegation"). The Court will specifically address the failure to intervene claims, *infra*.

7

**B. The Court will Issue Process on Plaintiff's Claims for Excessive Force Against Defendants Spears, Wilborn, Bordos, Loper and Randoff**

Plaintiff alleges several instances of excessive force on November 9, 2023, at the St. Louis City Justice Center. He asserts that he was subjected to excessive force when he was shot by rubber bullets by Deputy Commissioner Spears and Captain Wilborn in in 4 Bravo, Cell 12. Afterwards, he alleges that defendant Spears instructed defendants Bordos, Loper and Randoff to forcibly throw him on the ground and as a result, he was knocked unconscious. Additionally, he states that an unnamed Lieutenant dragged him from the cellblock, while restrained, down the walk, and he was placed in a restraint chair for 24-hours. The Court will address each instance of purported excessive force in turn.

The Due Process Clause protects pretrial detainees from the use of excessive force amounting to punishment. *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015); *see also Bell v. Wolfish*, 441 U.S. 520, 535 (1979) (stating that "under the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law"); *and Smith v. Conway Cty., Ark.,* 759 F.3d 853, 858 (8th Cir. 2014) (stating that "the Due Process Clause prohibits any punishment of a pretrial detainee, be that punishment cruel-and-unusual or not"). Analysis of excessive force claims under the Due Process Clause focuses on whether the defendant's purpose in using force was "to injure, punish, or discipline the detainee." *Edwards v. Byrd*, 750 F.3d 728, 732 (8th Cir. 2014). The Fourteenth Amendment gives state pretrial detainees "rights which are at least as great as the Eighth Amendment protections available to a convicted prisoner." *Walton v. Dawson*, 752 F.3d 1109, 1117 (8th Cir. 2014). Indeed, pretrial detainees are afforded greater protection than convicted inmates in the sense that the Due Process Clause prohibits the detainee from being punished. *Id.*

8

Liberally construed, the Court finds that plaintiff has stated plausible claims of excessive force in violation of the Fourteenth Amendment against defendants Deputy Commissioner Spears and Captain Wilborn, in their individual capacities, for firing at him with rubber bullets when he was in 4 Bravo, Cell 12. Plaintiff states in his complaint that at that time, he had his hands up, and then began to move down to lay on his chest. Moreover, plaintiff states that he was purportedly shot with the rubber bullets in the back of his head at a time when he was not resisting and allegedly laying on the ground. *See, e.g., Johnson,* at 827 F. App'x at 612. Taking plaintiff's allegations as true as required at this stage of the proceeding, the Court will issue process on this claim.

The Court also finds that plaintiff has stated a plausible claim of excessive force in violation of the Fourteenth Amendment against defendants Bordos, Loper and Randoff in their individual capacities for forcibly throwing plaintiff on the ground. Plaintiff claims that he was restrained at the time by his hands and feet, and that these defendants were told by defendant Spears to throw him down. Plaintiff alleges, these three defendants did so, with such force that he lost consciousness. Taking these allegations as true, plaintiff has stated enough to require the Court to process his claim for excessive force against defendants Bordos, Loper and Randoff in their individual capacities under the Fourteenth Amendment. *See, e.g., Blazek v. City of Iowa City*, 761 F.3d 920, 925 (8th Cir. 2014) (Court found that "when a person is subdued and restrained with handcuffs, a 'gratuitous and completely unnecessary act of violence' is unreasonable").

The Court additionally finds that it is plausible plaintiff could have stated a claim of excessive force in violation of the Fourteenth Amendment against the unnamed Lieutenant who dragged him, while in leg restraints and handcuffs, down the walk. However, plaintiff's failure to identify this defendant in his complaint is fatal to his claim for relief. *See Madewell,* 909 F.2d at

9

1208 (liability under 42 U.S.C. § 1983 requires a causal link to and direct responsibility for the alleged deprivation of rights). Thus, this claim is subject to dismissal.

As to plaintiff's allegations regarding the use of a restraint chair, the Court looks to various factors in determining whether the chair's use amounted to punishment. These factors include "the pretrial detainee's conduct prior to confinement, the duration of the confinement, whether the pretrial detainee was monitored at regular intervals while in the restraint chair, whether the pretrial detainee was given regular breaks from confinement to the restraint chair, how the pretrial detainee responded when the officials offered to release the pretrial detainee from the restraint chair, and whether the pretrial detainee was injured or suffered pain as a result of confinement to the restraint chair." *Undlin v. City of Minneapolis*, Civil No. 08–1855 (JNE/FLN), 2009 WL 3754208, at *5 (D. Minn. Nov. 4, 2009).

In this case, plaintiff states that he was placed in a restraint chair for a 24-hour period and the restraint chair was kept in a "rubber room." Plaintiff, however, does not speak to how often the restraints were checked or when/if officers offered to allow him to have breaks from the chair. Plaintiff also fails to indicate if he suffered from any injuries or medical issues while in the restraint chair. Although the Court must accept plaintiff's allegations as true and make all reasonable inferences in plaintiff's favor, *see Jones v. Douglas Cty. Sheriff's Dep't*, 915 F.3d 498, 499 (8th Cir. 2019), the Court cannot place facts in the record where there are none. As such, the Court cannot issue process as to plaintiff's claims relating to his time in the restraint chair. Thus, this claim must also be dismissed.

## C. Plaintiff's Claims for Failure to Intervene Are Subject to Dismissal

Plaintiff alleges in a conclusory fashion that defendants Gayden, Benjiman, Wilborn and Bronk watched and failed to intervene in unconstitutional misconduct while it was occurring.[5] "A jail official violates the Due Process Clause . . . when he is deliberately indifferent to a substantial risk of serious harm to a pre-trial detainee and fails to protect the detainee." *Glaze v. Byrd*, 721 F.3d 528, 531 (8th Cir. 2013). Deliberate indifference requires a detainee to make two showings. *Id.* First, objectively, the detainee must demonstrate that he faced a serious risk of harm. *Id.* Second, he must subjectively establish that the jail "official knew of and disregarded the risk to the inmate's safety." *Id.* Under the deliberate-indifference standard, a correctional officer can be held liable for failing to intervene in another officer's constitutional violation. *See Edwards*, 750 F.3d at 733 (determining that district court correctly denied guards qualified immunity after finding "that the guards were aware that excessive force was being used against the plaintiffs but did not intervene to protect them"); *Putman v. Gerloff*, 639 F.2d 415, 423 (8th Cir. 1981) (determining that a deputy could be held "jointly liable for failing to intervene if a fellow officer . . . was using excessive force and otherwise was unlawfully punishing the prisoner").

Even liberally construing the complaint, the Court is simply unable to find that plaintiff has stated plausible claims for failure to intervene as to the multiple claims of excessive force articulated in plaintiff's complaint. In the first instance of alleged excessive force, namely the shooting of rubber shotgun shells at plaintiff by defendants Wilborn and Spears, plaintiff has failed

---

[5]Plaintiff also alleges that defendant Spears ordered defendants Bordos, Loper and Randoff to engage in unconstitutional conduct. There is no indication that plaintiff is alleging a failure to train or supervise in this instance. Rather, it appears that plaintiff is merely asserting a general responsibility of Spears for supervision over the other officers, such as respondeat superior. There is no respondeat superior liability under 42 U.S.C. § 1983. *See Marsh v. Phelps Cty.*, 902 F.3d 745, 754 (8th Cir. 2018).

to specifically indicate which of the other defendants were at the scene at the time of the asserted shooting.

Similarly, in the second instance of purported excessive force by defendants Bordos, Loper and Randoff, plaintiff again fails to identify any other defendants who witnessed the event. For the last two allegations, being ostensibly dragged down the walk and left in the restraint chair, plaintiff has again failed to identify any defendant who allegedly failed to intervene in the unconstitutional conduct such that they could be held liable for disregarding the risk to his safety. For these reasons, the Court finds that plaintiff's claims for failure to intervene are subject to dismissal.

## D. Plaintiff's Claims for Deliberate Indifference to Serious Medical Needs Are Subject to Dismissal

As a result of the incident on November 9, 2023, plaintiff claims that his chin, wrist, and ankle were bruised, and he insists in a conclusory manner that it took defendants more than two weeks to give him medical attention for his health issues. He states that he did not get to see a doctor, but he admits that he was given an X-ray and "examined." Plaintiff does not indicate who examined him or who ordered the X-ray. Plaintiff also fails to state when the X-ray occurred.

The Fourteenth Amendment's Due Process Clause is used to evaluate a pretrial detainee's claims of deliberate indifference, whereas the Eighth Amendment is used to evaluate claims of convicted prisoners. *See Stearns v. Inmate Servs. Corp.,* 957 F.3d 902, 906 (8th Cir. 2020). However, this distinction "makes little difference as a practical matter," because the same standard is applied. *Kahle v. Leonard,* 477 F.3d 544, 550 (8th Cir. 2007) ("Pretrial detainees are entitled to the same protection under the Fourteenth Amendment as imprisoned convicts receive under the Eighth Amendment."); *see also Vaughn v. Greene Cnty.,* 438 F.3d 845, 850 (8th Cir. 2006) ("Although this court has yet to establish a clear standard [for medical mistreatment] for pretrial detainees, we repeatedly have applied the same 'deliberate indifference' standard as is applied to

12

Eighth Amendment claims made by convicted inmates."); *Hartsfield v. Colburn,* 371 F.3d 454, 457 (8th Cir. 2004) (applying the Eighth Amendment deliberate indifference analysis to a pretrial detainee's Fourteenth Amendment claim).

The Eighth Amendment prohibits cruel and unusual punishment, and limits conditions of confinement. *Robinson v. California*, 370 U.S. 660 (1962); *Rhodes v. Chapman*, 452 U.S. 337 (1981). The Supreme Court has explained this limit as a prohibition on punishments that "involve the unnecessary and wanton infliction of pain" including those that are "totally without penological justification." *Rhodes*, 452 U.S. at 346 (quoting *Gregg v. Georgia,* 428 U.S. 153, 173, 183 (1976)). A jail official's intentional denial of, or delayed access to, medical care for a prisoner's serious injury constitutes unnecessary and wanton infliction of pain, giving rise to a claim of deliberate indifference to that prisoner's serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976). To prevail on a claim of deliberate indifference, a plaintiff must prove that he suffered from an objectively serious medical need, and that prison officials actually knew of and deliberately disregarded that need. *Roberts v. Kopel*, 917 F.3d 1039, 1042 (8th Cir. 2019). "[D]eliberate indifference requires a highly culpable state of mind approaching actual intent." *Kulkay v. Roy*, 847 F.3d 637, 643 (8th Cir. 2017) (quoted case omitted). An inmate must demonstrate that a prison health care provider's actions were "so inappropriate as to evidence intentional maltreatment or a refusal to provide essential care." *Jackson v. Buckman*, 756 F.3d 1060, 1066 (8th Cir. 2014) (quoted case omitted).

Plaintiff has not indicated whether, or if, he asked a particular defendant for medical assistance after his altercation on November 9, 2023. He has not stated that he sought medical attention from one of the named defendants, such as pain medicine, to see a nurse, for ice or anti-inflammatories, but that he was denied such treatment. Moreover, he has not indicated that his

13

need for medical care was obvious to any one of the defendants in this action. In fact, plaintiff has indicated that he was actually "examined," although he does not state by whom he was examined. Moreover, he states that he got an X-ray, which had to have been ordered by a medical professional. Last, plaintiff acknowledges that he received medical treatment within a two-week period of the time of the altercation.

Given that plaintiff has not articulated which of the defendants in this case he believes denied him medical care, or what care he believes they denied him, the Court cannot find that he was subjected to deliberate indifference to serious medical needs. Further, plaintiff admits that he received some medical treatment (X-ray and examination) at some point after the November 9, 2023, incident. Thus, plaintiff did not go entirely without medical treatment for a long period of time, despite his conclusory claims to the contrary. The Court notes that "[t]he Constitution does not require jailers to handle every medical complaint as quickly as each inmate might wish." *Jenkins v. Cnty. of Hennepin, Minn.*, 557 F.3d 628, 633 (8th Cir. 2009). Based on all these reasons, plaintiff's complaint fails to state a claim of deliberately indifferent medical care against defendants. This claim will be dismissed under 28 U.S.C. § 1915(e)(2)(B).

### Motion for Appointment of Counsel

Plaintiff has also filed a motion for appointment of counsel. [ECF No. 3]. An indigent litigant has "neither a constitutional nor a statutory right to appointed counsel in civil cases." *Patterson v. Kelley*, 902 F.3d 845, 850 (8th Cir. 2018) (citing *Phillips v. Jasper Cty. Jail*, 437 F.3d 791, 794 (8th Cir. 2006)). A district court may appoint counsel in a civil case if it is "convinced that an indigent plaintiff has stated a non-frivolous claim . . . and where the nature of the litigation is such that plaintiff as well as the court will benefit from the assistance of counsel." *Id.* (citing *Johnson v. Williams*, 788 F.2d 1319, 1322 (8th Cir. 1986)). When determining whether to appoint

14

counsel for an indigent litigant, a court considers relevant factors such as the factual complexity of the issues, the litigant's ability to investigate the facts and present his or her claims, the existence of conflicting testimony, and the complexity of the legal arguments. *Id.* (citing *Phillips*, 437 F.3d at 794).

In this case, there is no indication that plaintiff is incapable of representing himself, and nothing in the instant motion or in the record before the Court indicates that the factual or legal issues are sufficiently complex to justify the appointment of counsel. Moreover, defendants have yet to be served with process and discovery has not begun, so there is no conflicting testimony. However, recognizing that circumstances may change, the Court will deny the motion for appointment of counsel without prejudice.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion seeking leave to commence this action without prepaying fees or costs [ECF No. 2] is **GRANTED**.

**IT IS FURTHER ORDERED** that, within thirty (30) days of the date of this order, plaintiff must pay an initial filing fee of $1.00. Plaintiff is instructed to make his remittance payable to "Clerk, United States District Court," and to include upon it: (1) his name; (2) his prison registration number; (3) this case number; and (4) the statement that the remittance is for an original proceeding.

**IT IS FURTHER ORDERED** that the Clerk of Court shall issue process or cause process to issue upon the complaint as to defendants Deputy Commissioner Unknown Spears and Captain Unknown Wilborn for excessive force in violation of the Fourteenth Amendment, for allegedly firing on plaintiff with rubber bullets, in their individual capacities. Defendants shall be served through the waiver agreement this Court maintains with the City of St. Louis.

**IT IS FURTHER ORDERED** that the Clerk of Court shall issue process or cause process to issue upon the complaint as to defendants Lieutenant Unknown Bordos, Lieutenant Unknown Loper and Officer Unknown Randoff for excessive force in violation of the Fourteenth Amendment, for allegedly throwing plaintiff down forcibly and allegedly knocking him unconscious, in their individual capacities. Defendants shall be served through the waiver agreement this Court maintains with the City of St. Louis.

**IT IS FURTHER ORDERED** that plaintiff's remaining claims against defendants brought pursuant to 42 U.S.C. § 1983, are **DISMISSED** without prejudice.

**IT IS FURTHER ORDERED** that all claims against defendants Officer Unknown Watson, Officer Unknown Williams, Officer Unknown Bryant, Officer Unknown Hampton, Lieutenant Unknown Gayden, Captain Unknown Benjiman and Unit Manager Unknown Bronk brought pursuant to 42 U.S.C. § 1983 are **DISMISSED** without prejudice.

**IT IS FURTHER ORDERED** that plaintiff's motion for appointment of counsel [ECF No. 3] is **DENIED** without prejudice.

**IT IS FURTHER ORDERED** that an appeal from Order would not be taken in good faith.

A separate Order of Partial Dismissal will be filed herewith.

Dated this 31st day of May, 2024.

JOHN A. ROSS
UNITED STATES DISTRICT JUDGE

16